# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CRIMINAL ACTION NO. 5:22-CR-00060-KDB-SCR

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | **ORDER** |
| MICHAEL ELLIOT KOHN, CATHERINE ELIZABETH CHOLLET, AND DAVID SHANE SIMMONS, | |
| Defendants. | |

**THIS MATTER IS BEFORE THE COURT** on Defendant Michael Elliot Kohn's Motion for an Evidentiary Hearing (Doc. No. 66), Motion to Strike the Notice of Forfeiture and Finding of Probable Cause (Doc. No. 67), Motions to Strike Surplusage (Doc. Nos. 68, 69); Motion to Dismiss the Indictment for Violation of the Appointments Clause and Federal Vacancy Reform Act (Doc. No. 70); the Government's Motion to Compel Disclosure of Reliance on the Advice of Counsel (Doc. No. 71); Defendant David Shane Simmons's Motion to Dismiss (Doc. No. 73) and Alternative Motion to Strike and For Discovery and an Evidentiary Hearing (Doc. No. 75); and Simmons' and Defendant Catherine Elizabeth Chollet's Intent to Adopt Motions of Co-Defendants (Doc. Nos. 72, 77). The Court has carefully considered these motions, the parties briefs, and the parties' oral arguments on December 19, 2023. For the reasons discussed below, the Court will **DENY** Kohn's Motion for an Evidentiary Hearing, but order the Government to provide affidavits as described below; **GRANT** Kohn's Motion to Strike the Forfeiture Allegation; **DENY** Kohn's Motions to Strike except as to Paragraph 4; **DENY** Kohn's Motion to Dismiss the Indictment for Violation of the Appointments Clause and Federal Vacancy Reform Act; **GRANT** the Government's Motion to Compel Disclosure of Reliance on the Advice of Counsel; **DENY**

Simmons's Motion to Dismiss; and **DENY** his Alternative Motion to Strike and For Discovery and an Evidentiary Hearing except as to the forfeiture allegations, finding of probable cause, and Paragraph 4.

## I.       FACTUAL AND PROCEDURAL HISTORY

In November 2022, the Defendants were indicted by a grand jury and charged with conspiracy to defraud the United States (all Defendants) (Count 1), in violation of 18 U.S.C. § 371; aiding and assisting in the preparation of false tax returns (all Defendants) (Counts 2-12), in violation of 26 U.S.C. § 7206(2); filing a false return (Simmons) (Counts 13-17), in violation of 26 U.S.C. 7206(1); and aiding and assisting in the filing of false tax returns (Kohn and Chollet) (Counts 18-23). *See* Doc. No. 1. Kohn and Simmons were also charged with wire fraud, in violation of 18 U.S.C. § 1343, but that charge has since been dismissed. *See* Doc. Nos. 1, 60, 61.

The Indictment alleges that the Defendants conspired to defraud the United States by promoting, marketing, and selling a fraudulent tax scheme known as the Gain Elimination Plan ("GEP") to their clients. *See* Doc. No. 1, at ¶¶ 1-2. Defendants allegedly used the GEP to reduce the taxable income of clients by fraudulently inflating business expenses through fictitious royalties and management fees. *Id.* at ¶ 20(c)-(d). These fictitious royalties and management fees were paid, on paper, to a limited partnership largely owned by a charitable organization. *Id.* at ¶¶ 2, 20(e). As alleged by the Government, these fees were fictitious and were then used to prepare false tax returns for the Defendants' clients. *Id.* at ¶ 2. Further, Defendants allegedly advised their clients that the GEP limited partnership was required to obtain life insurance on their behalf in order to cover the income allocated to, but allegedly not received by, a charitable organization. *Id.* at ¶ 20(e). Simmons allegedly sold the insurance plans to clients and he is alleged to have shared the substantial commissions he received with Kohn and Chollet. *Id.* at ¶¶ 21, 63-65. In total, the

Government alleges that this alleged scheme cost the United States Treasury tens of millions of dollars in unpaid taxes. *Id.* at 2.

Now before the Court are several motions filed by the various parties. The Court heard oral arguments on the motions on December 19, 2023, and they are all ripe for decision.

## II. DISCUSSION

### A. <u>Kohn: Motion for an Evidentiary Hearing (Doc. No. 66)</u>

In his Motion for an Evidentiary Hearing, Kohn asks the Court to hold a hearing regarding a possible conflict of interest involving special agents who he contends may have had some involvement with this case. Specifically, in discovery, the Government produced a memorandum of conversation ("Memorandum") which disclosed that two Internal Revenue Service Special Agents, who were to take part in a reverse proffer to Simmons, had close personal connections to two taxpayers implicated in the alleged scheme. However, according to the Government, the Agents were immediately walled off from the case and did not participate in the reverse proffer after the relationships were discovered.

Kohn argues that an evidentiary hearing is necessary to build a record so that he can determine whether to move to dismiss the indictment or to disqualify the prosecution team. *See* Doc. No. 66, at 1. Because a motion to dismiss or disqualify the prosecution would presumably be based on an alleged violation of his constitutional rights, Kohn must "make[] a substantial threshold showing" of an impermissible conflict. *Grant v. United States*, Nos. 2:06-1667 and 2:04-302, 2006 WL 3138589, at *2 (D.S.C. Oct. 31, 2006) (quoting *Wade v. United States*, 504 U.S. 181, 186 (1992)). However, "a hearing is not required when a court decides it 'would add little or nothing to the written submissions.'" *Id.* (citing *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001)).

The Memorandum states, when discussing an upcoming reverse proffer to Simmons, that one of the Special Agents assigned to the investigation, Johnathon McGill, told the other two Special Agents present, Brian Park and Summer Norton, that the investigation would require subpoenas served in Jefferson, North Carolina in the coming weeks. *See* Doc. 66-1. Park said that his mother-in-law and father-in-law lived in Jefferson. *Id.* After McGill confirmed that Park's in-laws were involved in the case, he told Park he could not participate in the reverse proffer. *Id.* At that point, Norton asked whether she should leave because she knew Park's wife.[1] *Id.* McGill and the Assistant United States Attorney present told Park and Norton that they could no longer have any involvement in the case. *Id.* In its response to Kohn's Motion, the Government adds more detail, explaining that Park and Norton had not been assigned to the investigation before the reverse proffer because they were new Agents and that they were immediately walled off from further involvement. *See* Doc. No. 80, at 4-5.

The Court finds that Kohn has not made the substantial showing required for an evidentiary hearing for several reasons. First, Kohn received the Memorandum in December 2022 and upon discovering it, did not ask the Government to provide additional information *See* Doc. No. 80, at 5 n.2. Instead, he waited nearly a year to file the present motion for a hearing. Second, Kohn has not specifically alleged that there are any meetings or proceedings in which these Agents participated. Third, as best stated by Kohn himself, "[t]he bottom line is this: there is no evidence before this Court and many questions remain." Doc. No. 88, at 4.

---

[1] The memorandum states that "Special Agent Norton asked if she should leave as well as she is well acquainted with Special Agent Norton's wife." Doc. 66-1, at 1. The Court, like Kohn, assumes this is a typographical error and should have read "Special Agent Park's wife." *See* Doc. No. 66, at 6 n.3.

Nevertheless, the Court will, for the sake of a more complete record, order the Government to provide affidavits addressing the involvement Agents Park and Norton had with this investigation and anything else relevant to this inquiry. Should these affidavits substantiate a legitimate concern that a conflict of interest exists, Kohn may renew his motion.

### B. <u>Kohn: Motion to Strike the Notice of Forfeiture and Finding of Probable Cause (Doc. No. 67)</u>

In his Motion to Strike the Notice of Forfeiture and Finding of Probable Cause, Kohn argues that the Court should remove these allegations from the Indictment because they relate to a non-existent Count 25, and if they were meant to reference Count 23, that Count has been dismissed. *See* Doc. No. 67. The Government does not oppose the Motion. *See* Doc. No. 78. Accordingly, the Court will grant this Motion.

### C. <u>Kohn: Motion to Strike Surplusage (Doc. No. 68)</u>

In his Motion to Strike Surplusage, Kohn moves to strike Paragraphs 4, 10, 13-15, 18, 19, and 58-65 from the Indictment under Federal Rule of Criminal Procedure 7(d). *See* Doc. No. 68, at 1. The Government does not oppose striking Paragraph 4, but contends that the other challenged paragraphs do not meet the stringent standard of Rule 7(d). *See* Doc. No. 81, at 9.

Rule 7(d) authorizes the Court "[u]pon the defendant's motion, … [to] strike surplusage from the indictment or information." The Rule's purpose, as explained by the Fourth Circuit, "is to protect a defendant against prejudicial allegations that are neither relevant nor material to the charges made in an indictment, or not essential to the charge, or unnecessary, or inflammatory." *United States v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006) (quoting *United States v. Poore*, 594 F.2d 39, 41 (4th Cir. 1979)). Thus, a motion to strike should only be granted "if it is clear that the

allegations are not relevant to the charge *and* are inflammatory and prejudicial." *Id.* (emphasis added) (quoting *United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir. 1998)).

Kohn argues that Paragraphs 4, 10, and 58-65 should be stricken because they relate to Count 23, which has since been dismissed. As noted above, the Government does not oppose striking Paragraph 4, and so the Court will grant the Motion as to Paragraph 4. As for Paragraphs 10 and 58-65, these paragraphs assert how the Defendants allegedly presented false information to an insurance company in order to purchase the life insurance policies alleged to facilitate the scheme and shared insurance commissions. *See* Doc. No. 1, at ¶¶ 10, 58-65. Although Count 23 has been dismissed, the Court finds that the challenged allegations are still relevant because they describe how the conspiracy alleged in Count 1 was carried out. Further Kohn makes no allegation that these paragraphs are inflammatory or unfairly prejudicial and the Court independently finds that they are not. *See* Doc. Nos. 68, 89; *See Williams*, 445 F.3d at 730 (noting that evidence is unfairly prejudicial when it creates a "genuine risk that the emotions of a jury will be excited to irrational behavior." (quoting *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996))). Therefore, the Court will deny Kohn's Motion as to Paragraphs 10 and 58-65.[2]

Kohn also asks the Court to strike Paragraphs 13-15, 18, and 19 because they allegedly improperly instruct on the governing law. The Government responds that the paragraphs are not misleading or inaccurate and otherwise are not irrelevant, inflammatory, and unfairly prejudicial. *See* Doc. No. 81, at 11. At the hearing, Kohn's counsel acknowledged that his concerns regarding

---

[2] If at trial the Government fails to offer proof relating to Paragraphs 10 and 58-65, or if the evidence offered has no relationship to the acts charged, then the Court may strike these paragraphs from the Indictment, give an appropriate limiting instruction to the jury, or decide not to send the indictment back with the jury. *See United States v. Clark*, 541 F.2d 1016, 1018 (4th Cir. 1976) (citation omitted).

these paragraphs were addressed by the Court stating it would not read the indictment to the jury at the outset of the case and that this issue would be handled with jury instructions or other appropriate action at a later phase in the trial. Accordingly, the Court will deny this portion of the Motion to Strike.[3]

In summary, the Court will deny Kohn's Motion to Strike with the exception of Paragraph 4.

### D. **Kohn: Motion to Strike Surplusage (Doc. No. 69)**

Kohn also seeks to strike references to his prior plea and conviction under 26 U.S.C. § 7212(a). He asserts that the reference to his prior conviction is irrelevant, prejudicial and inflammatory because evidence of his conviction would be inadmissible under the Federal Rules of Evidence and that the conviction itself was later found to be unconstitutional in *Marinello v. United States*, 138 S. Ct. 1101 (2018). *See* Doc. No. 69. He further noted at the hearing that he has a pending motion to expunge his conviction in the appropriate court.

Courts must be careful when deciding whether to strike language referencing a defendant's prior felony conviction because "to the layman's mind a defendant's criminal disposition is logically relevant to his guilt or innocence of a specific crime." *Poore*, 594 F.2d at 41-42 (quoting *United States v. Foutz*, 540 F.2d 733, 736 (4th Cir. 1976)). In the Indictment, the Government alleges Kohn misrepresented his prior conviction to gain the trust and confidence of prospective clients, allegedly even failing to disclose that he has been barred from practicing before the IRS

---

[3] As with the Paragraphs 10 and 58-65, if the Government fails to offer proof relating to Paragraphs 13-15, 18, and 19 at trial, or if the evidence offered has no relationship to the acts charged, then the Court may strike these paragraphs from the Indictment, give an appropriate limiting instruction to the jury, or decide not to send the indictment back with the jury. *See United States v. Clark*, 541 F.2d 1016, 1018 (4th Cir. 1976) (citation omitted).

since his conviction and not been reinstated. *See* Doc. No. 1, at ¶¶ 24-29. Evidence of such alleged conduct goes directly to an essential element of Count 1. To convict Kohn on Count 1, conspiracy to defraud the United States, "the government must show 'an agreement to commit an offense, willing participation by the defendant, and an overt act in furtherance of the conspiracy.'" *United States v. McNeal*, 818 F.3d 141, 149 (4th Cir. 2016) (quoting *United States v. Tucker*, 376 F.3d 236, 238 (4th Cir. 2004)). Kohn's alleged misrepresentations go directly to his willing participation in the alleged conspiracy and an overt act in furtherance of the conspiracy. Therefore, the Court finds that the reference to Kohn's prior conviction is not "unnecessary language" at this time. *See Poore*, 594 F.2d at 41-42 (holding that the district court should have struck references to the defendant's prior conviction because he stipulated that he had a qualifying prior felony conviction and so the detail was surplusage).

As for Kohn's argument that evidence of his prior conviction is inadmissible under Federal Rules of Evidence 403 and 404(b)[4] or that his conviction is no longer valid after *Marinello*, the Court finds that this argument is better suited for a motion in limine.

Therefore, the Court denies Kohn's Motion to Strike Surplusage.

### E.  Kohn: Appointments Clause Motion to Dismiss (Doc. No. 70)

---

[4] "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Further, Rule 403 states that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In his last Motion, Kohn moves to dismiss the Indictment on the grounds it violates the Appointments Clause and the Federal Vacancies Reform Act ("FVRA"). In short, he argues that all criminal tax prosecutions must be authorized by the Assistant Attorney General, Tax Division, ("AAGT") and because that position remains unfilled, the Indictment must be dismissed. *See* Doc. No. 70, at 1. The Government asserts that pursuant to a longstanding delegation order, other members of the Tax Division have the lawful power to authorize tax prosecutions. *See* Doc. 83, at 3-4.

The Constitution requires "Officers of the United States" to be appointed by the President and confirmed by the Senate. U.S. Const. art. II, § 2, cl. 2. Federal law states that Assistant Attorneys General are subject to these requirements and directs the President to "appoint, by and with the advice and consent of the Senate, 11 Assistant Attorneys General, who shall assist the Attorney General in the performance of his duties." 28 U.S.C. § 506.[5] However, given the often unwieldy nature of the confirmation process, Congress enacted the FVRA, which gives the Executive Branch limited authority to appoint interim officers to maintain the orderly functions of government. *See N.L.R.B. v. SW General, Inc.*, 580 U.S. 288, 292 (2017) ("[T]he responsibilities of an office requiring Presidential appointment and Senate confirmation . . . may go unperformed if a vacancy arises and the President and Senate cannot promptly agree on a replacement. Congress has long accounted for this reality by authorizing the President to direct certain officials to temporarily carry out the duties of a vacant PAS office in an acting capacity, without Senate confirmation.").

---

[5] At the hearing, the parties disagreed whether the AAGT is in fact a principal officer who requires nomination by the President and Confirmation by the Senate. However, because a holding that the AAGT is a principal officer does not affect the outcome here, and because the position has long been treated as though the official is a principal officer, the Court need not and does not decide this question.

Officials who "perform acting service" "shall perform" the "functions and duties" of the office to which they are appointed, albeit temporarily. *N.L.R.B.*, 580 U.S. at 296 (quoting 5 U.S.C. § 3345(a)). Here, there has not been a Senate-confirmed AAGT since June 2014. *See* Doc. No. 70, at 6. In the "interim" (spanning three presidential administrations), the role has been filled by a series of Principal Deputy Assistant Attorneys General and Acting Assistant Attorneys General. *Id.* at 6-8. In 2010, then-Acting AAGT John DiCicco issued Directive No. 138, which delegates the authority of the AAGT over criminal proceedings to the Deputy Assistant Attorney General, Criminal. *Criminal Tax Manual*, Directive No. 138, 51-53 (available at https://www.justice.gov/sites/default/files/tax/legacy/2014/08/05/ CTM %20Chapter%203.pdf). This delegation is still in effect. *Id.* Kohn argues that the delegation is unlawful because 28 C.F.R. § 0.70 is "a legally binding regulation that assigns specific functions and duties to the AAG alone." Doc. No. 90, at 2.

The FVRA states that the "function or duty" of an office is limited to actions "established by statute" that are "required by statute to be performed by the applicable officer (and only that officer)." 5 U.S.C. § 3348(a)(2)(A). The function or duty of the office also includes actions "established by regulation" that are "required by such regulation to be performed by the applicable officer (and only that officer)." § 3348(a)(2)(B). Thus, only actions limited by statute or regulation to an officer, and only that officer, cannot be redelegated.

Department of Justice Regulations state that certain enumerated functions "are assigned to and shall be conducted, handled, or supervised by, the Assistant Attorney General, Tax Division." 28 C.F.R. § 0.70. These functions include criminal prosecutions "arising under the internal revenue laws, and litigation resulting from the taxing provisions of other Federal statutes." § 0.70(a). However, there is no prohibition in the text of the regulation prohibiting redelegation and given

"the modern judicial doctrine approving broad subdelegation of authority within administrative agencies where subdelegation is in keeping with the nature of statutory duties and with Congress' intent," the Court will not read in such a prohibition. *House v. Southern Stevedoring Co.*, 703 F.2d 87, 88 (4th Cir. 1983) (citation omitted). To "read an assignment of authority to one officer as prohibiting any other officer from exercising that authority . . . would stand the subdelegation doctrine on its head—presuming statutory silence implies exclusivity." *Kajmowicz v. Whitaker*, 42 F.4th 138, 150 (3d Cir. 2002) (citing *United States v. Mango*, 199 F.3d 85, 90 (2d Cir. 1999)). Therefore, although § 0.70 delegates authority to the AAGT, it does not expressly delegate it to "*only* that officer." § 3348(a)(2) (emphasis supplied). Accordingly, the Court finds that § 0.70 does not assign the power to authorize and supervise criminal cases exclusively to the AAGT. Rather, this authority was lawfully redelegated by Directive No. 138, even though the acting official who promulgated it has since left office. *See Quiel v. USA*, No. CV-16-01535, 2018 WL 4385615, at *3 (D. Az. Sept. 14, 2018) (upholding the appointment of two prosecutors after the acting official who appointed them had left his position).

Directive 138 permits the Chief of a Criminal Section ("Chief") to authorize criminal prosecutions, with some exceptions, one of which is the "[p]rosecution of an attorney for criminal conduct committed in the course of acting as an attorney." *See* Directive 138. Therefore, for Simmons, a Chief could authorize his prosecution. As for Kohn and Chollet, the Deputy Assistant Attorney General ("DAAG") Criminal needed to authorize their prosecutions. At the Court's request, the Government has provided *ex parte* documentation regarding who authorized these prosecutions. They show that the appropriate official, a Chief, authorized prosecuting Simmons. *See ex parte* Doc. Nos. 93-1, 93-2. They also show that David Hubbert, a tax department DAAG

who exercised the responsibilities of the DAAG, Criminal, authorized the prosecution of Kohn and Chollet. *Id.*

Based on the documents submitted and the representations made by the Government as officers of the Court, the Court can thus conclude that Hubbert was authorized to approve this prosecution. Specifically, although he was initially appointed as the DAAG, Civil, at the relevant time he was the *only* DAAG in the Tax Division and thus not only was the highest ranking official in the Tax Division and *de facto* DAAG, Criminal, but also was expressly delegated the authority to authorize such prosecutions under Department of Justice Policy by virtue of his longstanding tenure. *See ex parte* Doc. Nos. 94-1, 94-2.

Therefore, these prosecutions were lawfully authorized and so the Court will deny Kohn's Motion.

**F.** **Government: Motion to Compel Disclosure on Reliance on Advice of Counsel (Doc. No. 71)**

In its Motion to Compel, the Government asks the Court to compel the Defendants to disclose whether they intend to use a "reliance on the advice of counsel" defense at trial. The Defendants argue that this disclosure is (1) not mandated by statute or the Federal Rules of Criminal procedure, (2) good cause for the disclosure has not yet been shown, (3) the Defendants have a constitutional right to wait until trial to present any possible defenses, (4) the motion is not yet ripe, and (5) the Government could seek a delay of trial after it rests its case-in-chief should it need time to respond to Defendant's reliance on the advice of counsel defense if presented at trial.

In some circumstances, the Federal Rules of Criminal Procedure require pretrial notice of an anticipated defense. *See* Fed. R. Crim. P. 12.1 (alibi); Fed. R. Crim. P. 12.2 (insanity); Fed. R. Crim. P. 12.3 (public authority). Advance notice is required in these situations to permit the

government to prepare for trial and to avoid the necessity of continuances in the middle of the trial. *See, e.g.*, Fed. R. Crim. P. 12.2 Advisory Committee Notes. While an advice-of-counsel defense is not one of these enumerated defenses, the Court has inherent authority to impose disclosure and notice requirements outside the Federal Rules of Criminal Procedure. *See United States v. Beckford*, 962 F. Supp. 748, 755-58 (E.D. Va. 1997); *United States v. Fletcher*, 74 F.3d 49, 54 (4th Cir. 1996) (district court had authority to require defendant to produce witness list prior to trial); *United States v. Kloepper*, 725 F. Supp. 638, 640 (D. Mass. 1989) ("The Federal Rules of Criminal Procedure were not designed to and do not entirely supplant [the inherent powers of the Courts to develop their own procedure] and residual power of the Court. It has long been held that the Federal Courts possess the inherent power to order discovery and inspection"); *United States v. Hearst*, 412 F. Supp. 863, 870 (N.D. Cal. 1975) (defendant ordered to give government notice and discovery of novel defense of "brainwashing" by a cult group even though it did not fall within the strict dictates of Rule 12.2).

Here, if an "advice of counsel" defense is asserted at trial without prior notice, it will likely result in a significant delay of the trial. To adequately respond to this defense, the United States would likely move for a continuance and to reopen discovery, which could be time-intensive, a scenario the Defendants acknowledged during the hearing. This scenario also appears likely, given that counsel for two of the Defendants noted that such a defense was probable. Moreover, there is a realistic chance that one of the Defendants asserts that he or she relied on the legal advice of one of the other Defendants. *See, e.g.*, Doc. No. 76, at 1-2, 8 (referring to the other defendants repeatedly as "experienced tax lawyers" while referring to Simmons as "just an insurance broker"). This could raise issues regarding the privilege against self-incrimination and/or attorney-client privilege and will almost certainly require further discovery and litigation. It may even lead one or

more Defendants to move to sever the trials. Accordingly, the Court will grant the Government's Motion and compel the Defendants to provide notice to the United States on whether they intend to rely on an advice of counsel defense and the advice on which they relied. This disclosure, including discovery related to this defense, must be made no later than March 4, 2024. Failure to disclose this information will result in the Defendants being precluded from raising this defense at trial. However, if the Defendants ultimately decide not to raise the defense, then the Government will be prohibited from using any discovery produced solely as a consequence of the disclosure of an advice of counsel defense.

### G. Simmons: Motion to Dismiss (Doc. No. 73)

In his Motion to Dismiss, Simmons argues that Counts 1-12 of the Indictment are fatally defective because they lack sufficiently specific allegations to apprise Simmons of what he must be prepared to defend himself against. He further urges the Court to dismiss Counts 1-17 on the grounds that he is subject to selective and/or vindictive prosecution. Lastly, he adopts Kohn's Appointments Clause challenge.

### 1. Specificity of the Allegations in the Indictment

At the heart of Simmons's argument is his assertion that Counts 1-12 of the Indictment lack specific allegations that he supplied false information that was intended to be used in the preparation of any tax return. *See* Doc. No. 76, at 7-8. The Government, in response, contends that not only does the Indictment contain sufficient specificity to alert Simmons of the charges against him, but Simmons also learned of the investigation years ago, gained further insight from three reverse proffers, and received substantial discovery from the Government after his arraignment. *See* Doc. No. 82.

Under Federal Rule of Criminal Procedure 7(c)(1), an "indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment need not contain the "detailed allegations [that] might well have been required under common-law pleading rules," because "they are surely not contemplated by Rule 7(c)(1)." *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007). Instead, "an indictment is legally sufficient (1) if it alleges the essential elements of the offense, that is, it fairly informs the accused of what he is to defend; and (2) if the allegations will enable the accused to plead an acquittal or conviction to bar a future prosecution for the same offense." *United States v. Rendelman*, 641 F.3d 36, 44 (4th Cir. 2002).

Count 1, conspiracy to defraud the United States, alleges Simmons and his co-Defendants:

> did unlawfully, voluntarily, intentionally, and knowingly conspire, confederate, and agree together and with each other to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and connection of income taxes…. All in violation of Title 18, United States Code, Section 371.

Doc. No. 1, at ¶¶ 67-69. The relevant section of the U.S. Code states that:

> [i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

Thus, "[t]o [allege] a § 371 conspiracy, the government must show 'an agreement to commit an offense, willing participation by the defendant, and an overt act in furtherance of the conspiracy.'" *United States v. McNeal*, 818 F.3d 141, 149 (4th Cir. 2016) (quoting *United States v. Tucker*, 376 F.3d 236, 238 (4th Cir. 2004)). Further, the prosecutor must allege that the defendant

"possessed 'at least the degree of criminal intent necessary for the substantive offense itself.'" *Id.* (quoting *Ingram v. United States*, 360 U.S. 672, 678 (1959)).

In the present Indictment, the Government has clearly alleged that (1) the Defendants agreed with each other to defraud the United States for the purpose of obstructing lawful tax proceedings, (2) they voluntarily did so, and (3) engaged in overt acts to accomplish the objective of the agreement. *See* Doc. No. 1, at ¶¶ 20-29, 58-69. Specifically, the Court notes that Simmons need not have personally entered information onto a taxpayer's tax return to be charged under this statute, despite Simmons's suggestion to the contrary at the hearing. Instead, the Government has met its burden at this stage by alleging that Simmons willingly agreed to defraud the United States, he did so voluntarily, and that he engaged in overt acts in furtherance of the objective (such as by allegedly facilitating the purchase of life insurance plans and sharing his commissions). Accordingly, the Government has met its burden under Rule 7(c)(1).

As for Counts 2-12, the Court also finds that the Government has met its burden. Counts 2-12, aiding and assisting in the filing of false tax returns, allege that Simmons and his co-Defendants:

> did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service for the tax years listed below, of the tax returns listed below, along with the accompanying schedules, for the taxpayers and entities listed below which were false and fraudulent as to a material matter. The tax returns reported false items on the lines and in the amounts listed below, among others, whereas KOHN, CHOLLET, and SIMMONS then and there well knew and believed the amounts on the lines listed below were substantially understated… All in violation of Title 26, United States Code, Section 7206(2).

Doc. No. 1, at ¶ 71 (table omitted). The Indictment also includes a table associating each Count with an individual or joint federal income tax return on which the Defendants allegedly falsely reported the total income. *Id.* The relevant section of the U.S. Code states that:

> Any person who.... Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document.... shall be guilty of a felony...

26 U.S.C. 7206(2). Thus, to allege a § 7206(2) offense, the Government must assert that "(1) the defendant aided, assisted, or otherwise caused the preparation and presentation of a return; (2) that the return was fraudulent or false as to a material matter; and (3) the act of the defendant was willful." *United States v. Kamalu*, 298 F. App'x 251, 255 (4th Cir. 2008) (quoting *United States v. Aramony*, 88 F.3d 1369, 1382 (4th Cir. 1996)).

Here, the Government has alleged that the defendants aided, assisted, procured, counseled, or advised the preparation and presentation of multiple tax returns, that the tax returns contained false and fraudulent information about a material matter (the individual's total income), and that they did so willfully. Doc. No. 1, at ⁋ 71. Specific to Simmons, the Government has alleged that he provided false information to an insurance company to purchase life insurance plans to help obfuscate the allegedly fictitious fees and expenses used to falsify the tax returns. *See generally* Doc. No. 1. Accordingly, the Government has met its burden under Rule 7(c)(1).

In summary, the Court finds that the Indictment sufficiently alleges the essential elements of the § 371 and § 7206(2) offenses and that the charges are specific enough to allow the Defendants to plead double jeopardy, if jeopardy attaches in this case, if retried for the same offense.

## 2. **Selective and/or Vindictive Prosecution**

Simmons further asks the Court to dismiss Counts 1-17 as applied to him because they constitute "selective and vindictive prosecution because the Government has singled out Simmons as the only insurance broker and the only taxpayer to prosecute in connection with the tax services rendered by The Kohn Partnership ("TKP")." Doc. No. 76, at 11 (emphasis in original). In response, the Government argues that Simmons is not similarly situated to the other insurance broker due to Simmons's knowledge of the alleged scheme and his choice to allegedly share his commissions with his co-Defendants. Further, the Government notes that unlike the other taxpayers in this case, Simmons did not use the GEP on his tax returns, but instead allegedly underreported gross receipts and overstated expenses. *See* Doc. No. 82, at 10-11.

Defendants asserting a selective prosecution claim must meet a "demanding" standard, *United States v. Armstrong*, 517 U.S. 456, 464 (1996), in part because the Attorney General and United States Attorneys enjoy "'broad discretion' to enforce the Nation's criminal laws," *id.* (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1996). Accordingly, "in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *Id.* (quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926).

To establish selective prosecution, Simmons must "demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *United States v. Hastings*, 126 F.3d 310, 313 (4th Cir. 1997) (quoting *Armstrong*, 517 U.S. at 465). This requires a showing that similarly situated individuals were not prosecuted and that the decision to prosecute was made in bad faith. *See United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996). "[D]efendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *United States v. Lindh*, 212 F. Supp. 2d 541, 566 (E.D. Va. 2002)

(*Olvis*, 97 F.3d at 744). Those prosecutorial factors include offers of immunity, strength of the evidence, defendant's role in the crime, whether another jurisdiction is prosecuting the defendant, defendant's candor and willingness to plead guilty, resources needed to convict a defendant, extent of prosecutorial resources, impact of the prosecution on related investigations and prosecutions, prosecutorial priorities, etc. *See Olvis*, 97 F.3d at 744.

Simmons contends that he is being singled out for refusal to cooperate with the Government and because he is not related to one of the Special Agents. *See* Doc. No. 76, at 11. The Government contends that he has been indicted because he allegedly had knowledge of the tax scheme and shared his commissions with the other Defendants, unlike the other insurance broker. *See* Doc. No. 82, at 10. Merely sharing an occupation does not support an allegation of selective prosecution. Moreover, the Government, in its discretion, would be allowed to consider factors such as a potential defendant's culpability and willingness to cooperate. *See Olvis*, 97 F.3d at 744. Further, the Government has clearly alleged that Simmons did not use the GEP on his tax returns, something Simmons's counsel acknowledged at the hearing, which means he is not similarly situated to the other taxpayers, who all did. *See* Doc. No. 82, at 10. The Government also explained that it only charged Simmons, rather than Simmons and Chollet, with filing false tax returns because it did not believe that venue existed to charge Chollet with that offense in this District. *Id.* at 11. These decisions fall within the Government's broad discretion to enforce criminal laws.

The Court is equally unpersuaded by Simmons's argument that the Government engaged in vindictive prosecution. "To establish prosecutorial vindictiveness, a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *United*

*States v. Villa*, 70 F.4th 704, 710 (4th Cir. 2023) (quoting *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001). Simmons has provided no objective evidence of such animus. Instead, he merely reiterates his conclusory allegations that he is being treated differently than the other insurance broker and taxpayers in his case, and that the Indictment is insufficiently specific, all of which the Court finds unpersuasive for the reasons stated above. *See* Doc. No. 76, at 13. As for his argument that the Government failed to comply with his request for a pre-indictment conference, which the Government concedes it mistakenly overlooked, that does not establish animus toward Simmons, particularly in light of the fact that the United States engaged in three reverse proffers with Simmons and his counsel, indicating that there was continuing and open dialogue between the parties. *See* Doc. No. 82, at 12. Thus, Simmons has failed to plausibly allege that the Government engaged in vindictive prosecution.

Therefore, the Court will deny Simmons's request to dismiss the claims against him in the Indictment on the grounds of selective and/or vindictive prosecution.

### 3. Appointments Clause

Simmons adopts Kohn's Appointments Clause challenge but did not offer his own arguments in support of that Motion. The Court will deny this challenge for the reasons discussed in Section E.

## H. Simmons: Alternative Motion to Strike and For Discovery and an Evidentiary Hearing (Doc. No. 76)

In the event the Court denied his Motion to Dismiss, Simmons also filed a Motion to Strike and a Motion for Discovery and an Evidentiary Hearing.

### 1. Motion to Strike

Simmons asks the Court to strike (1) the notice of forfeiture and associated finding of probable cause from the Indictment and (2) all references to Simmons preparing tax returns or causing them to be prepared from the Indictment. *See* Doc. No. 76, at 14.

### a.   Notice of Forfeiture and Finding of Probable Cause

For the reasons discussed in Section B, the Court will grant the first part of Simmons's Motion to Strike and strike the notice of forfeiture and associated finding of probable cause from the Indictment.

### b.   References to Simmons

Simmons first incorporates his arguments from the Motion to Dismiss and asks the Court to remove all references to him in Paragraphs 2, 20(d)-(f), 22, 23, 47, 50, 50(b), and 54 on the grounds that the allegations lack sufficient specificity of the charges against him. However, for several of these references, Simmons in fact is challenging the sufficiency of the evidence and/or stating his innocence. *See* Doc. No. 76 at 14-15 ("Simmons did <u>nothing</u> with regard to royalties and management fees…. [t]he Government knows full well that, within the millions of pages of discovery produced and exchanged in this matter, all of the evidence is that Simmons deferred explanations about the GEP to Kohn, Chollet or TKP"). The one paragraph which Simmons alleges has irrelevant and unfairly prejudicial language, Paragraph 50(b), merely states that his office manager, after she confirmed she could help a client open bank accounts in the names of the GEP limited partnerships, spoke with a TKP staff accountant who informed her the money in the account could be moved as quickly as she would like. Doc. No. 1, ¶¶ 50(b). However, the Court, without the benefit of an explanation from Simmons as to what specifically makes these statements unfairly prejudicial and irrelevant finds that this statement is not unfairly prejudicial or irrelevant

because it is merely a factual allegation involving how the alleged tax scheme was carried out. For the reasons discussed in Section G, and because a Motion to Strike pursuant to Rule 7(d) should only be used to "protect a defendant against prejudicial allegations that are neither relevant nor material to the charges made in the indictment" rather than to assert factual innocence, the Court will deny Simmons's request. *United States v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006).

Simmons next asks the Court to strike Paragraphs 4, 10, 21, 31, 32, 38, 39, 44, 53, and 58-65. Simmons seeks to dismiss Paragraphs 4, 10, 21, 53, and 58-65 on the grounds that they relate to the since dismissed Count 23. The Court has reviewed these paragraphs and, for the reasons explained in its analysis in Section C, strike Paragraph 4 but deny the Motion as to Paragraphs 10, 21, 53, and 58-65. As for Paragraphs 31, 32, 38, 39, and 44, Simmons argues for each that "no case, Federal statute or IRS regulation … criminalizes such conduct." Doc. No. 76, at 17-18. There is no requirement that each individual allegation in an indictment allege conduct that itself constitutes a crime and so this protest is without merit. Further, as explained above, a Motion to Strike is not the proper vehicle to assert factual innocence. Accordingly, the Court will deny Simmons's Motion to Strike for Paragraphs 31, 32, 38, 39, and 44.

In sum, the Court will deny Simmons's Motion to Strike, except as to the notice of forfeiture, associated finding of probable cause, and Paragraph 4.

### 2. <u>Motion for Discovery or an Evidentiary Hearing</u>

In his Motion, Simmons also asks that the Government provide, and presumably for the Court to compel, (1) evidence relating to the decision to indict Simmons as a taxpayer, (2) evidence relating to deconflicting Agent Gracyzk[6] and Special Agents Norton and Park, (3) evidence

---

[6] No party addresses who is Agent Gracyzk or this Agent's role in the case and so the Court cannot identify the individual or consider this argument.

regarding the Government's decision not to indict other insurance brokers, (4) information regarding each investigating agent and their involvement in the investigation against any of the defendants that led to the Indictment, (5) all reports relating to confidential sources, (6) and the instructions of law provided to the grand jury. Simmons develops no argument regarding why he should be entitled to these discovery materials. *See* Doc. No. 76, at 18-19.

Requests (1) and (3) relate to Simmons's earlier discussed Motion to Dismiss the Indictment for Selective and Vindictive Prosecution. "When acting on probable cause that a crime has been committed, a government prosecutor generally enjoys unfettered discretion in the decision whether to prosecute." *Olvis*, 97 F.3d at 743 (citing *Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978)). Accordingly, the "evidentiary threshold for obtaining discovery from the government to support such a claim" is high. *Id.* (citing *Armstrong*, 517 U.S. at 468 ("The justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim.")). As discussed above, Simmons has made no credible showing that he has been subject to selective and/or vindictive prosecution and so he is not entitled to discovery on these topics. Further, Federal Rule of Criminal Procedure 16(a)(2) specifically exempts "discovery or inspections of reports, memoranda, or other internal government documents made by the government attorney or agent in connection with investigation or prosecution of the case." Therefore, the Court will deny this part of the motion.

As for requests (2) and (4), the Court has addressed this request in its decision on Kohn's motion for an evidentiary hearing. Simmons will have access to the affidavits provided by the government and he may renew his motion should they support a legitimate claim of conflict of interest. To the extent Simmons seeks information about all members of the investigation team,

rather than the Agents he specifically named, the Court will deny that request because Simmons has provided no showing as to why he would be entitled to that information.

As for request (5), Simmons again has made no argument as to why he should receive this information, nor did the Government specifically address it. *See* Doc Nos. 76, 82, 87. In order to receive information such as the disclosure of the identity of an informant, the Court must consider the circumstances of the case and take into consideration the crime charged, possible defenses, possible significance of testimony by the informer, and other relevant factors. *See United States v. Bell*, 901 F.3d 455, 466 (4th Cir. 2018). As with several of the other requests, Simmons has made no showing regarding why he would be entitled to that information and without any argument the Court cannot conclude that it should compel the disclosure of such information, let alone have an evidentiary hearing.

As for request (6), Simmons would presumably argue that the Government committed misconduct in its instructions to the grand jury. However, a party seeking "grand jury transcripts must make a 'strong showing of particularized need.'" *United States v. Indivior Inc.*, No. 1:19-CR-00016, 2019 WL 6039969, at *6 (W.D. Va. Nov. 14, 2019) (quoting *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983)). Here Simmons has made no showing of need and instead has made only "general unsubstantiated or speculative allegations of impropriety." *Id.* The language of the indictment "is clearly not instructions to the grant jury" and thus "is not a strong showing of particularized need." *Id.* at *7. Thus, because Simmons has not alleged, let alone shown, misconduct that could substantially affect the grand jury's decision to indict, the Court will deny his request.

Therefore, Simmons' Motion is denied except as to requests (2) and (4), which are to be resolved by the Government providing the requisite affidavits as described above.

# I. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant Michael Elliot Kohn's Motion for an Evidentiary Hearing (Doc. No. 66) is **DENIED,** but the Government is ordered to file affidavits consistent with the instructions in this Order on or before January 15, 2024;

2. Defendant Michael Elliot Kohn's Motion to Strike the Notice of Forfeiture and Finding of Probable Cause (Doc. No. 67) is **GRANTED**;

3. Defendant Michael Elliot Kohn's Motion to Strike Surplusage (Doc. No. 68) is **DENIED** except as to Paragraph 4;

4. Defendant Michael Elliot Kohn's Motion to Strike Surplusage (Doc. No. 69) is **DENIED;**

5. Defendant Michael Elliot Kohn's Motion to Dismiss the Indictment for Violation of the Appointments Clause and Federal Vacancy Reform Act (Doc. No. 70) is **DENIED**;

6. The Government's Motion to Compel Disclosure of Reliance on the Advice of Counsel (Doc. No. 71) is **GRANTED** and Defendants are ordered to give notice if they intend to rely on the defense and disclose relevant discovery on March 4, 2024;

7. Defendant David Shane Simmons's Motion to Dismiss (Doc. No. 73) is **DENIED;**

8. Defendant David Shane Simmons's Alternative Motion to Strike and For Discovery and an Evidentiary Hearing (Doc. No. 75) is **DENIED** except as stated in the Order;

9. The Court further orders that any motions in limine will be due on March 18, 2024 and responses will be due on March 25, 2024; the Court will then schedule a hearing, if necessary, to address the motions; and

10. This case shall **proceed to trial on the merits on the remaining claims** in the absence of a plea agreement or other resolution among the parties.

**SO ORDERED.**

Signed: December 26, 2023

Kenneth D. Bell
United States District Judge