# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CRIMINAL ACTION NO. 5:22-CR-00060-KDB-SCR

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL ELLIOT KOHN,<br>CATHERINE ELIZABETH CHOLLET, AND<br>DAVID SHANE SIMMONS,<br><br>**Defendants.** | **ORDER** |

**THIS MATTER** is before the Court on the Defendants' Motions for Judgment of Acquittal or, in the Alternative, Motions for a New Trial (Doc. Nos. 211-13). In their motions, the Defendants ask the Court to set aside the guilty on all counts verdict rendered by the jury on April 25, 2024. The Court has carefully considered these motions and the parties' briefs. For the reasons discussed below, the Court will **DENY** the motions.

## I. LEGAL STANDARD

Rule 29 of the Federal Rules of Criminal Procedure states that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "A defendant may move for a judgment of acquittal . . . within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." *Id*. "If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." *Id*.

1

"A judgment of acquittal based on the insufficiency of evidence is a ruling by the court that as a matter of law the government's evidence is insufficient 'to establish factual guilt' on the charges in the indictment." *United States v. Alvarez*, 351 F.3d 126, 129 (4th Cir. 2003) (quoting *Smalis v. Pennsylvania*, 476 U.S. 140, 144, 106 S. Ct. 1745, 90 L. Ed. 2d 116 (1986)). "The test for deciding a motion for a judgment of acquittal is whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982). Moreover, the jury, not the reviewing court, assesses the credibility of the witnesses and resolves any conflicts in the evidence presented. *United States v. Wilson*, 118 F.3d 228, 234 (4th Cir. 1997). Consequently, a court must deny a defendant's Rule 29 motion and accept the jury's verdict if, "after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1402 (4th Cir. 1993) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

## II. FACTS AND PROCEDURAL HISTORY

In November 2022, the Defendants were indicted by a grand jury and charged with conspiracy to defraud the United States (all Defendants) (Count 1), in violation of 18 U.S.C. § 371; aiding and assisting in the preparation of false tax returns (all Defendants) (Counts 2-12), in violation of 26 U.S.C. § 7206(2); filing a false return (Simmons) (Counts 13-17), in violation of 26 U.S.C. 7206(1); and aiding and assisting in the filing of false tax returns (Kohn and Chollet) (Counts 18-23), in violation of 26 U.S.C. § 7206(2). *See* Doc. No. 1. Kohn and Simmons were also charged with wire fraud, in violation of 18 U.S.C. § 1343, but that charge was dismissed before trial. *See* Doc. Nos. 1, 60, 61.

After numerous pretrial motions, the case went to trial on April 15, 2024. The Government presented evidence that the Defendants engaged in a scheme to defraud the United States by promoting, marketing, and selling to clients an unlawful tax scheme known as the Gain Elimination Plan ("GEP").[1] Defendants used the GEP to reduce the taxable income of clients by fraudulently inflating business expenses through fictitious royalties and management fees. These fictitious royalties and management fees were paid, on paper, to a limited partnership largely owned by a charitable organization. According to the Government's evidence, these fictitious fees were then used to prepare false tax returns for the Defendants' clients. *Id.* at ¶ 2. Further, Defendants advised their clients that the GEP limited partnership was required to obtain life insurance on their behalf in order to cover the income allocated to, but not received by, the charitable organization. Simmons sold the necessary insurance plans to many of these clients and shared the substantial commissions he received with Kohn and Chollet.

The jury returned a guilty verdict on all counts on April 25, 2024. Now before the Court are Defendants' motions for acquittal, which the Government opposes.

### III.  DISCUSSION

The Defendants allege a number of errors infected their trial such that acquittal should be entered, or a new trial granted. Because many of the grounds for their motions overlap (and in some places appear to be copied verbatim from each other's motions), the Court will address the common arguments before the individual ones.

---

[1] In its Response to these motions, the Government provided a lengthy and comprehensive review of the evidence presented at trial that the Court finds to be accurate. *See* Doc. No. 215 at 4-33. The Court will accordingly provide only a short summary of the evidence here.

3

### A. Literal Truth

The Defendants each assert that the guilty verdicts rendered by the jury for Counts 2-12 (and 18-22 between Kohn and Chollet) must be reversed under a "literal truth" defense. In short, they contend that because the numbers on the tax forms themselves add up to the total income listed, the tax returns were "literally true." However, their assertion that 1+2=3 is "literally true" holds no water when the evidence was sufficient to prove beyond a reasonable doubt that "1" and "2" were the result of fabricated deductions and fees.

Moreover, the Government has persuasively demonstrated that *United States v. Reynolds*, 919 F.2d 435 (7th Cir. 1990), the case Defendants rely on, is distinguishable based on changes to the tax forms themselves and the holding in a case from the Third Circuit that cabined the defense dramatically to a situation inapplicable here. *See* Doc. No. 215 at 34-35; *United States v. Gollapudi*, 130 F.3d 66 (3d Cir. 1997). Thus, the Court finds that both factually and legally, the Defendants' assertion that the total income line on their tax returns was "literally true" is incorrect. Accordingly, no jury instruction needed to be given on this defense.

### B. "Amendment" of the Indictment

During trial, the Court allowed the Government to amend the indictment by redacting the line number references for Counts 2-22. An impermissible "constructive amendment," or fatal variance, "occurs when the court 'broadens the possible bases for conviction beyond those presented by the grand jury.'" *United States v. Burfoot*, 899 F.3d 326, 338 (4th Cir. 2018) (quoting *United States v. Floresca*, 38 F.3d 706, 710 (4th Cir. 1994)); *United States v. Allmendinger*, 706 F.3d 330, 339 (4th Cir. 2013) (noting "it is the *broadening* [of the bases for the defendant's conviction] that is important—nothing more." (quoting *Floresca*, 38 F.3d at 711) (emphasis in original)). Effectively, the Court may not allow the indictment to be amended in

4

such a way that it "change[s] the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment." *Id.* (quoting *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999)). An amendment accordingly violates a defendant's rights "when the variance either "surpris[es the defendant] at trial and hinder[s] the preparation of his defense, or ... expos[es] him to the danger of a second prosecution for the same offense." *United States v. Redd*, 161 F.3d 793, 795 (4th Cir. 1998) (quoting *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996)) (alterations in original).

Here, no such broadening occurred. In the original indictment, each count listed the tax return charged, the approximate filing date, the false item or items on that form, and the (incorrect/false) amount reported. *See* Doc. No. 1 at 14-17. For every count, the false item or items reported was the total income, which was then further identified by the line number. *Id.* The Government, however, cited the wrong line number for certain counts and so the Court allowed the line numbers to be redacted. However, no changes were made to the tax return charged, filing date, false item alleged (which for all remained the total income), or the amount reported for that false item. This change to fix typographical errors did not broaden the basis for any count because those counts still charged the same line and amount reported on that line on the same tax returns.

Moreover, Defendants were not surprised at trial nor were their preparations of their defense hindered. *See United States v. Redd*, 161 F.3d 793, 795 (4th Cir. 1998). As the Government points out, Kohn was prepared to file a 32-page motion – with embedded images of tax returns showing the total income line – immediately upon the close of the Government's case, making clear that he was familiar with the charging language and lines charged. *See* Doc. No. 215 at 40. Kohn even concedes that he "is not objecting to his notice," but is instead

5

"objecting to what the jury was allowed to consider in their deliberations." Doc. No. 225 at 3. However, as explained above, the jury was not allowed to consider anything new or broader than the original charges. Instead, the jury was allowed to consider the offenses as charged, merely without a typographical error.

**C.** **Venue**

Defendants also, as they have previously, claim that this District is the improper venue for this trial and so the Court must grant a judgment of acquittal as to Counts 2-12 and 18-22. "While 26 U.S.C. § 7206(2), which is involved here, does not expressly identify where the tax violation is deemed to have occurred, the prohibitive language focuses on the conduct of any person who 'aids or assists in, or procures, counsels, or advises the preparation' of a false return." *United States v. Hirschfeld*, 964 F.2d 318, 321 (4th Cir. 1992). "Thus, any such conduct constitutes a continuation of the offense and forms a basis for establishing venue." *Id.* (citing *United States v. Griffin*, 814 F.2d 806, 810 (1st Cir. 1987)).

As explained by the Government in its Response, the Government's evidence showed that Kohn and Chollet effectively used Simmons, and his office manager Brandi Davis ("Davis"), as their agents in collecting tax information from the clients associated with Counts 2-12, all but one of whom lived in this District. The taxpayer who was not a resident of this District testified that he often worked through Simmons' office (which was located in this District) for tax-related matters because he had trouble getting in touch with Kohn. Thus, even if Kohn and Chollet completed the actual tax preparation in Missouri, there is ample evidence for the jury to have concluded that the Defendants either took specific actions in this District to aid or assist in the preparation of a false tax return or caused those actions to take place.

6

Case 5:22-cr-00060-KDB-SCR   Document 232   Filed 08/02/24   Page 6 of 11

As for Counts 18-22, the same reasoning applies. Simmons resided and worked in this District and evidence showed that Davis sent Simmons' tax information to The Kohn Partnership meaning that Kohn and Chollet knowingly caused acts to occur in this District so they could prepare Simmons' tax returns which contained the fraudulent deductions and understated income.[2] Thus, venue existed in the Western District of North Carolina to try this case.

D. **Conspiracy Count (Simmons & Chollet)**

Both Simmons and Chollet argue that the evidence did not support a conviction on Count 1 (Conspiracy to Defraud the United States). "The test for deciding a motion for a judgment of acquittal is whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982).

Here, there was substantial evidence from which the jury could find that the Government established the charged conspiracy existed and that Simmons and Chollet participated in it. There was evidence that Simmons not only acted as an agent for Chollet and Kohn by collecting tax documents, but also that he helped clients acquire the life insurance policies necessary for the GEP plan (often including falsehoods in his cover letters to insurance companies to help clients

---

[2] Kohn's argument that venue does not exist based on the collection of data for the preparation of tax returns in this District because the Government "also alleges that Kohn completely made up numbers on the tax return and that the total income line was false and not based in reality" is unpersuasive. Doc. No. 225 at 4. The Government presented evidence at trial that while the Defendants prepared the client's tax returns, they deducted fictious royalties and/or management fees as expenses in order to reduce their client's tax obligations. It is those deductions that the Government proved were fabricated, not every single input or document incorporated into the tax return. For that reason, the Government charged the Defendants based on the "total income" line on the tax returns rather than every single line on each return. Because this same explanation also addresses Chollet's argument that the Government changed its theory mid-trial, the Court need not address her argument separately.

7

purchase these plans such as by saying one client's business was projected to grow by 500% in value over the next five years, which the client testified was entirely false). The Government's evidence further showed that he then split those commissions with Kohn and Chollet despite representing in his annual compliance forms that he did not share commissions.

There was also evidence that Chollet, for her part, helped prepare the fraudulent tax returns and shared in the insurance commissions split among the Defendants. Many of the clients involved in the GEP worked with Kohn and Chollet or just Chollet. *See, e.g.*, Doc. No. 215 at 23-27 (evidence from clients Novak, Rose, Alepra, and Snow). Thus, substantial evidence existed sufficient to warrant a jury to find the Defendants guilty on Count 1.[3]

### E. Jury Instruction-Related Objections

#### 1. Reliance on Advice of Counsel Instruction (Simmons)

Simmons argues the Court committed reversible error in declining to use a proffered jury instruction on the reliance on advice of counsel defense. To assert the advice of counsel defense, a defendant must establish that there was both "full disclosure of all pertinent facts to an [attorney], and a good faith reliance on the [attorney's] advice." *United States v. Shareef*, 852 F. App'x 92, 95 (4th Cir. 2021) (quoting *United States v. Powell*, 680 F.3d 350, 356 (4th Cir. 2012)) (alterations adopted). These elements include the assumption that "the advice was sought and received before taking action" and that defendants "in good faith sought the advice of a professional whom they considered competent." *Dallman*, 433 F. Supp. 3d at 810 (quoting

---

[3] Because Simmons and Chollet were both convicted by the jury of Conspiracy to Defraud the United States, they may be held liable "for the substantive offenses committed by other members of the conspiracy when the offenses are during and in furtherance of the conspiracy." *United States v. Aramony*, 88 F.3d 1369, 1379 (4th Cir. 1996) (citing *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946)). Thus, the Court need not address their respective arguments that they must be acquitted on Counts for which they allege only their other co-conspirators were active participants. *See* Doc. No. 212 at 6; Doc. No. 213 at 11.

*United States v. O'Connor*, 158 F. Supp. 2d 697, 727–28 (E.D. Va. 2001)). To receive the jury instruction, a defendant must demonstrate that he made the requisite disclosure and relied on the advice in good faith. *See United States v. Lugo*, 131 F. App'x 901, 905 (4th Cir. 2005) (citing *United States v. Butler*, 211 F.3d 826, 833 (4th Cir. 2000)).

Simmons made no such showing. In his motion, he states only that the Court should have allowed him to introduce a 2005 opinion letter from the law firm Greenberg-Trauig, which was not created for or in connection with Simmons or his attorneys/the other Defendants in this case (and was excluded on hearsay grounds) and an email showing that he had received that opinion letter from his attorney, Chollet. *See* Doc. No. 212 at 32-33. However, he did not at trial make any showing that he disclosed pertinent facts to his attorneys, let alone complete disclosure of those facts, or that he sought in good faith to rely on their advice. Instead, he argues now that there was full disclosure of the pertinent facts because the Defendants were the only people who knew the facts and there "is no requirement that the defendant himself be the person who makes that full disclosure." Doc. No. 226 at 4. However, as explained above, that very requirement *does* exist. *See Lugo*, 131 F. App'x at 905 ("A defendant must demonstrate that *he* made full disclosure of all pertinent facts to counsel and relied on counsel's advice in good faith.") (emphasis supplied)). Further, again, he presented no evidence (and none was presented) that he relied on the advice in good faith, notwithstanding his own knowledge related to the scheme. Thus, the reliance defense is inapplicable, and any related jury instruction unwarranted.

### 2. Authorization (Chollet)

In her motion, Chollet states that she presented evidence warranting an authorization instruction. However, the evidence did not support such an instruction. Merely working alongside or for a co-conspirator does not create an authorization defense. Moreover, evidence

was introduced that Chollet had her own mastery and understanding of the plan and accordingly prepared tax returns for several clients using the GEP. She even used the plan herself. Moreover, Chollet herself notes that she earned an L.L.M. degree in Tax, meaning she had the knowledge to understand the plan's illegality. *See* Doc. No. 213 at 12. Also, there was no evidence presented that she was merely following instructions from Kohn without an understanding of the plan or its potential consequences. As such, the request for an authorization instruction lacked an appropriate foundation and was properly denied.

F. **Kohn's Individual Objections Regarding his Prior Conviction**

At trial, the Court allowed the Government to admit a Stipulation agreed upon by the parties about Kohn's 2002 plea agreement related to charges of tax fraud to show that the explanations he gave his clients regarding the circumstances surrounding his conviction were false, which the Government argued was probative of his intent, knowledge, and lack of mistake. The Court addressed this issue pretrial and again during trial and it need not do so in detail for a third time here. For the reasons previously given by this Court, this objection is denied as is Kohn's objection regarding the validity of his prior conviction. Having reviewed Kohn's argument and the applicable case law, the Court disagrees that his prior conviction should be deemed unconstitutional in light of the later-decided *Marinello v. United States*, 138 S. Ct. 1101 (2018), particularly given the evidence presented was not introduced to prove he had previously been convicted of a crime, but to show that he lied to clients to entice them to participate in the GEP.

Moreover, Chollet's argument that this evidence concerning Kohn unfairly prejudiced her is unpersuasive. At no point did the Government argue that the conviction involved Chollet nor was that inference made by other evidence. Lastly, the Court notes that it issued a limiting

instruction regarding this evidence, informing the jury of the limited purpose for which the evidence could be considered.

### G. Chollet's Objection Regarding the Impeachment of Damian Novak

In her Motion, Chollet claims that she was prejudiced by the Court restricting her attorney from pursuing a line of impeachment against Damian Novak, one of her former clients. However, she presents no new arguments for the Court to consider in her motion and so the Court need not revisit its prior ruling on this issue.

### H. New Trial Motions

Defendants each ask the Court to award them a new trial should the Court decline to reverse the jury verdict. However, finding that the grounds stated above are insufficient to warrant a judgment of acquittal, the Court will not award a new trial because the interests of justice do not so require. *See* Fed. R. Cr. P. 33(a).

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motions for Judgment of Acquittal or, in the Alternative, Motions for a New Trial (Doc. Nos. 211-13) are **DENIED.**

**SO ORDERED.**

Signed: August 2, 2024

Kenneth D. Bell
United States District Judge